[Civ. No. 1132.          Third Appellate District.—September 23, 1913.]

## E. F. EATON, Respondent, v. L. C. LOCEY, Administrator With the Will Annexed of the Estate of Clara E. Eaton, Deceased et al., Appellants.

COMMUNITY PROPERTY—PURCHASE OF REAL ESTATE IN WIFE'S NAME.—
In this action brought by a man against the devisees of his deceased wife to quiet title to real estate purchased in her name, the evidence supports findings that the property was community and paid for by money belonging jointly to the husband and wife.

ID.—PRESUMPTION THAT PROPERTY IS SEPARATE—EVIDENCE TO OVERCOME.—The testimony introduced by the husband is sufficient to overcome the presumption that the title to the property was vested in the wife as her separate estate, or that the husband intended the conveyance to operate as a gift to her.

ID.—EVIDENCE OF PLAINTIFF—REVIEW ON APPEAL.—In such case it is beyond the province of the appellate court to declare that the plaintiff's testimony, which does not appear to be unreasonable or improbable, is not true, it being entirely the function of the trial court to pass upon the weight of the evidence and the credibility of the witnesses.

ID.—EVIDENCE AS TO WHETHER PROPERTY IS COMMUNITY—ADMISSIBILITY.—It is not proper for the husband to testify that the funds from which the property was purchased were not the "separate property" of the wife, but such testimony is not prejudicial if the witness also testifies that the funds were the result of their joint earnings during coverture.

ID.—WITNESS—SUGGESTIVE OR LEADING QUESTIONS.—It often happens that cross-examination elicits new matter with reference to which questions suggestive in form may be asked on redirect examination without impropriety, or, at any rate, without harm to the other

side, and questions in this case relative to the earnings of the husband come within that rule.

ID.—EVIDENCE AS TO WHETHER PROPERTY COMMUNITY—EXECUTION OF DEED.—The execution of a deed by the wife, not in the presence or with the knowledge of the husband, is a self-serving declaration on the issue whether the property is community or separate.

ID.—DECLARATIONS OF DECEDENT AS TO JOINT BANK ACCOUNT.—Declarations of the wife concerning a joint bank account of herself and husband, which tend to show that he had no interest therein, are self-serving and not admissible in evidence.

ID.—DECLARATIONS OF DECEDENT AS TO USE OF MONEY IN PURCHASE OF STOCK.—Declarations of the wife that the husband had used her money to buy stocks for himself are not only self-serving but immaterial.

APPEAL from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

H. B. McClure, and D. E. Perkins, for Appellants.

Bradley & Bradley, for Respondent.

HART, J.—An action by the plaintiff to quiet title to a certain tract of land, embracing eighty acres situated in Tulare County.

The plaintiff and Clara E. Eaton, deceased, were husband and wife. The title to the land in controversy was in the name of said Clara. She died on the fifteenth day of May, 1911, in the state of Pennsylvania, leaving estate in Tulare County, California. She left a last will and testament and, after due proceedings had in the superior court in and for the county of Tulare, the defendant, Locey, was appointed administrator with the will annexed to her estate.

By her said will, she devised to the defendants, Paul and Jesse Leitenberger, five acres each of the land in controversy,

The plaintiff claims that, notwithstanding that the title deed to the land was in the name of Clara, the same was, nevertheless, community property, it having been purchased and paid for by money belonging jointly to himself and his deceased

wife, and the court found this claim to be true and rendered and caused to be entered judgment accordingly.

The defendants appeal from the judgment and the order denying them a new trial.

The principal question presented here is whether the findings are sufficiently supported by the evidence. Several of the rulings of the court upon the evidence are also assigned as prejudicial error.

1. The findings are based, mainly, upon the testimony of the plaintiff, who testified, in substance, as follows: That he was married to Clara Eaton, the deceased, in the month of December, 1880, in Trevorton, Pennsylvania, and resided in California from October, 1906, until April, 1907; that, in the latter part of October, 1906, he visited and inspected the land in question with a view of buying it; that the land had previously been visited and seen by his wife, but that no suggestion was made with reference to purchasing it until the witness had seen it; that the tract consisted of three hundred and twenty acres of land, and that he and his wife joined with several other parties in purchasing the entire tract, the plaintiff and his wife taking eighty acres thereof and agreeing to pay and in fact paying therefor the sum, approximately, of four thousand dollars, said payment being made out of the community funds of the plaintiff and his wife. The deed, he said, was made in the name of his wife because "it was understood between my wife and I if I should survive her the property was to be mine. . . . A small portion of that money that went to pay for the consideration for this land was earned by Clara E. Eaton. A greater portion of it was earned by me in buying and selling real estate while living in California. I had the management of this particular tract of land up to the time of my wife's death. The money was deposited while in California in our joint names of E. F. and Clara E. Eaton. Before going to California, if my memory serves me right, it was deposited in the joint account of E. F. and Clara E. Eaton in the National Bank of Shamokin, Pennsylvania. It was our joint money, from our joint earnings. . . . There was no portion of the consideration for the purchase of the land the separate property of Clara E. Eaton." Q. "Did you at the time the deed was made to your wife, give or intend to give her that part of your money which went into the pur-

chase of this tract of land, as a gift, or did you intend to hold that land as community land?" A. "It was not a gift but community land."

On cross-examination of the plaintiff, it was shown that, while living in Pennsylvania, his business was that of a photographer, and that by that business and also by engaging in some real estate transactions he earned certain sums of money during his married life. This money, he said, was deposited in the bank in the joint names of himself and wife. He and his wife had a joint bank account in a bank in Los Angeles, California, as well as one in a bank in the state of Pennsylvania. The money so deposited was from the joint earnings of his wife and himself. He further testified that his wife was the sole heir of her father and mother, whose estates, which were of considerable value, she inherited or succeeded to. He testified that he made two payments on the land in dispute, one of one thousand two hundred and fifty dollars and the other of one thousand seven hundred and thirty dollars, both by checks drawn by him on the joint bank account of himself and wife. There were some other smaller payments made on the land, but he could not recall how or when they were made. The check for one thousand seven hundred and thirty dollars was the last payment made and was in full payment of the purchase price of the land.

Albert C. Fisher, cashier of the First National Bank of Trevorton, Pennsylvania, testified that the plaintiff and his wife opened a joint account in said bank in April, 1907, and that, at the time of the latter's death, the amount of said joint account was $568.30.

Edward J. Miller, a bookkeeper of the First National Bank of Shamokin, Pennsylvania, testified that both the plaintiff and his wife had individual accounts with said bank. "Clara E. Eaton has two cards," he continued, "one is a continuation of an account opened in our bank on July 8, 1902. There were deposits during the year 1902 up to the year 1911. Mr. Eaton had an individual account opened January 29, 1904, and closed up September 6, 1904, and had an account June 29, 1905, up to March 22, 1906. The account of Mr. Eaton has not been opened since 1906. E. F. and Clara E. Eaton have a joint account which was opened March 19, 1906. It was opened in both their names. We got E. F. Eaton's signature

when the joint account was opened. The account was closed October 29, 1906; and opened again April 6, 1908, which remained opened until May 13, 1911. I think both drew checks on the account, to what extent I do not know. Either one can draw checks on the account in their individual name. The check drawn on the First National Bank of Shamokin, Pa., for one thousand seven hundred and thirty dollars, signed E. F. Eaton, was made payable to the bank for the purchase of a New York draft in favor of the bank of Tulare, California.'' This witness then gave a detailed statement of the deposits made with said bank by E. F. and Clara Eaton in their joint names, the first joint deposit being in the form of a check for one thousand four hundred dollars on a Harrisburg, Pa., bank.

The defendants introduced testimony tending to show that the plaintiff had made both oral and written declarations whereby he in effect admitted that the land in dispute was the separate property of his wife and that the same was bought with her separate money. It was also shown by one of the witnesses for the defendants that Clara Eaton had, in the presence of the plaintiff, asserted that the land was bought with her separate money, her husband merely negotiating and' carrying out the transaction for her.

It is readily to be observed from the foregoing presentation of the state of the record as to the proofs that there exists here a distinct conflict in the evidence upon the question whether the land was or was not bought with money belonging jointly to the plaintiff and his wife, and it is clear that the evidence produced by the plaintiff in support of his claim that the land was bought .and paid for by himself and his wife out of their joint or community funds is sufficient to support the findings in that particular. It is equally clear that the testimony of the plaintiff, if believed by the trial court, as obviously it was, is sufficient to overcome the presumption, arising from the fact that the plaintiff permitted the deed to be made to his wife, that the title to the land was thereby vested in her as her separate property (Civ. Code, sec. 164), or that he intended that the conveyance should operate as a gift of the land to her. (*Alferitz* v. *Arrivillaga,* 143 Cal. 649, [77 Pac. 657].)

Counsel, in their brief, present, against the decision upon the facts, an argument, based upon a critical analysis of the evidence, which appears to be very forceful, but it is an argument which, addressed to a court of review, can be of no avail to the defendants under the state of the record as to the facts, it being beyond the province of this court to declare that the plaintiff's testimony, which does not appear to be unreasonable or improbable, is not true. It was, as is familiarly understood, entirely the function of the trial court to pass upon the weight of the evidence and to that end determine the question of the credibility of the witnesses who gave testimony in the case. The findings in favor of the plaintiff constitute, of course, indubitable and conclusive evidence of the fact that the trial judge believed the testimony of the plaintiff as against any adversary proof which was presented by the defendants, and we can discern no just or legal reason for holding that the court's judgment in that regard is wrong.

2. The court, against the objection of the defendants, permitted the plaintiff to testify that the money which was used in payment for the land was not the "separate property" of the wife of the plaintiff. The same witness was also allowed to say, over the objection of the defendants, that the money so used was earned by him and his wife during their coverture. An answer to the following question to the plaintiff was also allowed: "If there was a payment made, by whom was it made and out of what fund?"

It was manifestly improper to permit the witness to say that the funds from which the payment for the land was made were not the "separate property" of his wife. Whether the money so used constituted community property or the separate property of either spouse, is a question of law, depending on the manner and time of its acquisition. (*Estate of Pepper,* 158 Cal. 619, 625, [31 L. R. A. (N. S.) 1042, 112 Pac. 62].) But we cannot say that the answer was prejudicial to the defendants, since the witness declared, in reply to the other questions referred to, which called for competent testimony, that the money was the result of the joint earnings of himself and wife after their marriage.

3. The plaintiff testified that, after his wife had acquired the estate of her father and mother, he gave his personal attention to her business affairs, negotiating and executing all the

transactions in connection therewith. He said that, acting for his wife, he bought and sold real estate and that for such services his wife had agreed that he should retain as his own the profits on any deals thus made, while she was to have as her own all rents coming from her property. This testimony was brought out on re-direct examination for the purpose of rebutting any inference which might have followed from the cross-examination of the witness as to whether he himself, as a matter of fact, ever earned any money other than the small amounts which he stated that he had acquired through the prosecution of his profession as a photographer. Pursuing this line of inquiry, his attorney asked the plaintiff this question: "Is it not a fact, Mr. Eaton, by reason of that understanding and agreement between you and your wife, that you to a certain extent neglected or gave up your photographic business and went into the business of buying and selling real estate?" The question was allowed over the objection of the defense that it was leading and had no pertinent bearing upon the issues. The question, barring its form, while calling for testimony of no great importance, was proper as tending to explain why the witness earned and accumulated so comparatively a small aggregate amount at his professional calling and as further tending to explain the manner in which he to some extent earned and acquired a community interest in the joint bank account from which the money paid for the land was obtained. The question was leading, a form in which a party is not ordinarily permitted to frame questions to his own witness, but it often happens that the cross-examination elicits new matter with reference to which questions suggestive in form may be asked on redirect without impropriety, or, at any rate, without harm to the other side, and it is believed that the question objected to here comes within that class.

4. Objections were sustained to a number of questions propounded by counsel for the defendants to the witness, Shoner, an attorney, who had transacted some legal business for Clara Eaton, the purpose of said questions being to show that the witness had prepared for Mrs. Eaton certain "deeds and papers in reference to the California land" and the particular land thereby conveyed, that she (Mrs. Eaton) "was the only party to the deeds," and that, in certain conversations with the witness, she discussed the "joint account of her and her

husband," and complained "about her husband having her property, using her money to buy stocks in his own name." The course of the court in disallowing answers to said questions, which answers would probably have brought out the testimony mentioned, is assigned as prejudicially erroneous, but clearly it was not. The fact that Mrs. Eaton made deeds conveying the property in dispute to other parties cannot be held to be an act binding on the plaintiff. It could no more be so than the fact that she attempted to make a testamentary disposition of the property. Both the deeds and the will in that respect, implying as they do that she claimed the land as her separate estate, would, as evidence in this case, amount to mere self-serving declarations. If the deeds referred to constituted a conveyance of the land in dispute, and had been executed and delivered to the grantees by Mrs. Eaton in the presence of or with the knowledge of the plaintiff and without protest from him, the situation would be different, and the documents would be admissible against his claim of a community interest in the land. But it was not made to appear that the plaintiff knew anything of the deeds.

The declarations of the deceased concerning the joint account of herself and husband, if tending to show that as a matter of fact he had no interest in said account, which in all probability would have been the result of the testimony, were clearly self-serving, and her statement to Shoner, if she made it, that the plaintiff had used her money to buy stocks for himself is not only self-serving but immaterial to any issue in the case.

5. The court did not commit error in its ruling foreclosing inquiry into the extent of the real estate holdings of Christian Kramer, father of Mrs. Eaton, and whose estate, as seen, the latter inherited. The purpose of the inquiry was to show, indirectly, how much separate real property Mrs. Eaton owned It was important, of course, to show that Mrs. Eaton owned an extensive separate estate, but it was admitted by the plaintiff that his wife succeeded to the estates of her deceased father and mother, and that said estates consisted of considerable real property as well as of personal property and that the real property was very valuable. We are, therefore, unable to perceive wherein further inquiry into that matter would have

been of any advantage to the defendants. The ruling was harmless, even if erroneous.

Thus we have disposed of all the points made by the defendants for a reversal.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.