[Civ. No. 1476.  Third Appellate District.—March 16, 1916.]

## KATHERINE S. CROWLEY, Respondent, v. SAVINGS UNION BANK AND TRUST COMPANY, as Executor, etc., Appellant.

JOINT TENANCY—SAVINGS BANK DEPOSIT—CONSTRUCTION OF WRITING.— A writing signed by a husband and wife at the time of the deposit of a sum of money by them in a savings bank, which provides that all moneys then on deposit, or at any time thereafter deposited by them, should be their joint property, with right of survivorship, and that such moneys were payable to either, or to the survivor, without reference to the original ownership of such moneys, constitutes a joint tenancy as to the fund with right of survivorship, and, at the death of either, the ownership of the deposit passes to the survivor.

ID.—RECOVERY OF DEPOSIT—EVIDENCE—DECLARATIONS OF TESTATOR.— In an action by the surviving wife to recover the balance of such a deposit on hand at the death of her husband, the subsequent will of the deceased wherein he declared that all his property was separate property, and wherein he directed "that all moneys, bank accounts, stocks, bonds, and other securities now in the joint name or joint custody of myself and wife, constitute a part of my said separate estate and are to be administered upon by my said executor pursuant to the terms of this will," is inadmissible as evidence of an intention other than that expressed in the writing accompanying the deposit.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

Wm. H. Chapman, and Sullivan, Sullivan and Theo. J. Roche, for Appellant.

O'Gara & De Martini, and Bert Schlesinger, for Respondent.

CHIPMAN, P. J.—Plaintiff, the surviving widow of Timothy J. Crowley, deceased, commenced this action to recover the balance of a bank account alleged to have been deposited with defendant bank by Mr. and Mrs. Crowley in the name of T. J. Crowley or Katherine Crowley, wife, payable to the survivor of them.  The amended complaint alleges:

"(2) That prior to and on the 21st day of January, 1913, plaintiff, Katherine S. Crowley and Timothy Jay Crowley, were the joint owners with right of survivorship of and in a certain deposit of money amounting to the sum of fourteen thousand thirty-four ($14,034.92) dollars and ninety-two cents on deposit as a savings bank deposit with said defendant, a corporation, in its individual capacity. That said deposit was and is represented by ordinary deposit account No. 131,260 on the books of said defendant in its individual capacity. That said deposit was and is the balance of moneys deposited by said plaintiff and said Timothy Jay Crowley with the said corporation upon the understanding and agreement made by said Timothy Jay Crowley and plaintiff with said corporation that all moneys at any time deposited by said Timothy Jay Crowley and plaintiff, or either of them, in the said account, were and should continue to be the joint property, with right of survivorship, of said Timothy Jay Crowley and said Katherine S. Crowley, and were and should continue to be payable to them, or either of them, or to the survivor of them, without reference to the original ownership of such moneys, and upon the further understanding and agreement that the act of so depositing said moneys was and should be an absolute termination of any original ownership thereof.

"(3) That said defendant accepted said deposit and ratified and agreed to the agreement and understanding aforesaid in relation thereto.

"(4) That on the 21st day of January, 1913, and while said deposit was owned as aforesaid, and was on deposit with said defendant under said agreement and understanding, said Timothy Jay Crowley died and plaintiff survived him.

"(5) That upon the death of said Timothy Jay Crowley as aforesaid, plaintiff Katherine S. Crowley became, ever since has been, and now is the sole owner of said deposit and entitled to receive from said defendant in its individual capacity said sum of fourteen thousand thirty-four ($14,034.92) dollars and ninety-two cents."

The cause was tried by the court without a jury. The court made the following findings:

"(1) That each and all of the allegations of plaintiff's amended complaint in the above-entitled action are true.

"(2) That at the time of the death of said Timothy Jay Crowley, deceased, said Timothy Jay Crowley was not the owner of the whole or of any part of the deposit of money described in said amended complaint except as joint owner with plaintiff, Katherine S. Crowley, subject to the right of survivorship. That upon the death of Timothy Jay Crowley, his interest in said deposit passed to plaintiff. That since the death of said Timothy Jay Crowley, his estate has not been and is not the owner of the whole or of any part of said deposit. That defendant Savings Union Bank and Trust Company, a corporation, as executor of the last will and testament of Timothy Jay Crowley, deceased, is not entitled to receive the whole or any part of said deposit and is not entitled to all or any of the interest or dividends accruing thereon or which have accrued thereon.

"(3) That since the commencement of the above-entitled action, to wit, on the 30th day of June, 1913, a dividend amounting to two hundred eighty and 70/100 ($280.70) dollars accrued and became due upon said deposit."

It appears that after the account was opened the Savings Union changed its name to Savings Union Bank and Trust Company, the corporation otherwise remaining unchanged.

The account bearing the number 131,260 was opened on the fifth day of January, 1909, by a deposit of seven thousand dollars under the following agreement:

"San Francisco, Cal., Jany. 5, 1909.

"To the San Francisco Savings Union:

"All moneys now on deposit, or at any time hereafter deposited by or for us or either of us, to the credit of Timothy J. Crowley or Katherine, wife, ordy. deposit account No. 131,260, with the dividends thereon and accumulations thereof, are, and shall be, the joint property (with right of survivorship) of the undersigned, and are payable to us or either of us, or to the survivor of us, or to the executors, administrators or assigns of such survivor, without reference to the original ownership of such moneys; the act of so depositing said moneys, being absolute termination of any original ownership thereof; and are subject to all national and state laws governing such moneys, now or hereafter in force.

"This account may be terminated at any time by the board of directors of said San Francisco Savings Union; and the opening of this account is sufficient and complete evidence of

the acceptance and ratification by said San Francisco Savings Union of the terms of deposit herein set forth, without other or further action on its part.

"(Signed)                              T. J. Crowley,
                              "Katherine Crowley.

"O. D. No. 131,260.                   Joint agreement.
                    "Signed.
                                        $7000.00

"Your names in full: Timothy J. Crowley, or Katherine, wife.

"We admit full knowledge of the 'Conditions of Agreement' on which deposits may be made with, and will be repaid by the San Francisco Savings Union, as per copy of said 'Conditions' in our pass book, and we hereby accept same and agree to be bound thereby in the relation of depositors with said San Francisco Savings Union.

"Witness our hands and seals this Jan. 5, 1909.

"(Signed)                              T. J. Crowley,
                              "Katherine Crowley.

"Address: 1403 Willard St.

"Mother's maiden name: Margaret Sheehan."

One of appellant's contentions is that the evidence shows that Mrs. Crowley was not present when this document (plaintiff's exhibit No. 4) was signed by her husband, and that it was not signed by her at that time. Such was the testimony of one of the witnesses, assistant cashier Whittle, who was deposit teller of defendant bank. He further testified: "Q. Now, at that time that $7,000.00 was deposited in that bank, was there anything said by Mr. Crowley to you as to the character of the account? A. Well, he wished the account in the name of himself and wife."

Mrs. Crowley testified: "To Mr. Schlesinger: I live at 1403 Willard Street. I am the widow of Timothy Jay Crowley, deceased, and was his wife during the last fourteen years of his life. He died on January 21, 1913. The name Katherine Crowley appearing on plaintiff's exhibit No. 4 for identification, is my signature. I first signed that paper in the San Francisco Savings Union in 1909. I think it was, on the date appearing on the document. My husband was with me when I signed it. I read the paper over before I signed it. I understood it. My husband read the paper over to me. After he read the paper to me and after I signed it, he handed it

to me to read over myself. That is the paper that was handed to the bank officials. I have seen before these two bank-books numbered 131260, marked plaintiff's exhibits 2 and 3. I always had them in my possession. I am the Katherine S. Crowley mentioned in those bank-books.'' On cross-examination she testified: ''To Mr. Roche: I certainly was present in the bank upon the day upon which that signature was made by me. I was present in the San Francisco Savings Union Bank the day upon which I signed this instrument, and that was the same date upon which my husband signed his name. I recall distinctly that my husband and I were both present at the time this document was signed. . . . I think Mr. Whittle filled out the body of this agreement, but I am not quite sure about that. That is my best recollection.'' She testified to many things she remembered as occurring at the bank and to instructions given her by her husband where to sign the document.

Mr. Whittle testified: ''Upon the death of Mr. Crowley, this paper (plaintiff's exhibit 4) was amongst the official documents in our bank, and was kept in the usual place and in its present condition, with the exception of the filing marks on the reverse side. The number appearing on that contract is 131260, which is the same number appearing on the passbook.''

As to the fact of Mrs. Crowley's presence, and the signing of the agreement by her at the bank, the court accepted Mrs. Crowley's testimony and we find nothing in the record to warrant us in holding that the court was not justified in its action.

It is further contended by appellant that this account, No. 131,260, was closed on April 1, 1909, and the entire balance transferred to ordinary deposit account No. 131,975. Witness Whittle testified: ''On the 1st day of April, 1909, the $7,000.00 previously deposited at the time this account was opened was transferred to another account, numbered 131975. I cannot now recall, without referring to our records, what account that was, but in any event this account was closed.'' The words ''this account was closed'' were, on motion of plaintiff, stricken out and the ruling is assigned as error. We pause to say that we think the ruling was not error. In the sense defendant sought to apply the words they were but the

conclusion of the witness.   The facts as to this transaction were fully shown.

It appeared that, on April 1, 1909, this seven thousand dollar deposit was withdrawn and deposited to an account opened in the name of San Francisco National Bank, trustee, for T. J. and Katherine Crowley, to enable this bank to issue letters of credit to the Crowleys, who intended to visit Europe. The account No. 131,260, however, was not closed, for, on April 20, 1909, a deposit was made to that account and, on the return of the Crowleys, in September, 1909, many deposits, some of them large ones, were made to this account, as shown by the ledger account and pass-books in which all the transactions, from the initial deposit of seven thousand dollars to the death of Mr. Crowley, were entered.

Witness D. L. Clarke, assistant secretary of defendant bank, testified: "Referring to ordinary deposit book No. 131260, which was marked for identification plaintiff's exhibit No. 2, I do not wish to be understood as saying that the account was closed.   The book was closed and a new one issued of this same account, issued under the same number and same ledger. That particular pass-book was called in, as it appears, on October 12, 1912.   It was not pursuant to any resolution of the board of directors, but it was customary, in connection with the changing of the name of the bank, for us to take in the old pass-books when they came in, whenever customers were willing to sign them, and issue a new book in the name of the bank."

The withdrawal of the initial deposit was explained, and nothing in connection with the withdrawal indicated an intention to close the account.   On the contrary, deposits began to be made shortly after to this same account, and continued for a period of four years and until Mr. Crowley's death. It was an open and active account, deposits being made during the Crowleys' absence through instructions given before their departure for Europe and continued after their return, as we have said, until Mr. Crowley's death.

Mrs. Crowley testified: "I have seen before these two bank-books numbered 131260, marked plaintiff's exhibits 2 and 3. I always had them in my possession.   On some occasions I withdrew money from this bank account, and on other occasions my husband drew money from it.   On the occasion when I would withdraw money from this particular account, I had

the pass-book with me and presented it to the bank. I have been present at times in that bank when my husband withdrew moneys from that account and on those occasions he presented the bank-book to the bank. He had the bank-book whenever he wanted it and so did I. It was kept in our home —that is, the home of myself and Mr. Crowley. It was in the possession of both of us.''

Mr. Whittle testified: ''Some of the time when Mr. Crowley came in and withdrew or deposited money, Mrs. Crowley accompanied him, and she came in by herself and dealt with the bank.'' Mr. Clarke testified: ''I know that withdrawals were made by both Mr. and Mrs. Crowley, that is separate withdrawals. Mr. Crowley withdrew some of these moneys on some occasions, and Mrs. Crowley withdrew. These withdrawals occurred after the opening of the account.''

The contention that the account was closed on April 1, 1909, and that subsequent deposits and withdrawals were not made under the original agreement is not supported by the evidence. On the contrary, the evidence showed that the account as represented by the two pass-books, exhibits 2 and 3, both numbered 131,260, was an open, running account to which deposits were frequently made, and from which withdrawals were also frequently made both by Mr. and Mrs. Crowley, sometimes when both were present, and at other times by them separately, from January 5, 1909, to December 24, 1912. Pass-book No. 2 was called in and pass-book No. 3 issued when the bank changed its name, but the account remained throughout under the original number, 131,260.

The agreement under which all these transactions occurred unmistakably constituted a joint tenancy as to the fund with right of survivorship, and that at the death of either the ownership of the balance, whatever it might be, remaining on deposit passed to the survivor. The right of plaintiff to the balance for which she brought the action arises from the well-understood incident of a joint tenancy—that, upon the death of one of two joint tenants, the survivor thereupon becomes the sole owner of the entirety, not by descent, but by survivorship, and in virtue of the original event creating the tenancy. The principles governing this case are so well settled that discussion of them would be supererogatory. Let it suffice to refer to *Carr* v. *Carr*, 15 Cal. App. 480, [115 Pac. 261] ; *Drinkhouse* v. *German Savings & Loan Society*, 17 Cal.

App. 162, [118 Pac. 953]; *Sprague* v. *Walton,* 145 Cal. 228, [78 Pac. 645]; *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370], and the recent cases of *Kennedy* v. *McMurray,* 169 Cal. 287, [146 Pac. 647], and *Estate of Harris,* 169 Cal. 725, [147 Pac. 967].

There remains only to be considered alleged errors of the court in excluding certain evidence offered by defendant.

Defendant offered in evidence the will of Timothy J. Crowley, bearing date March 23, 1909, in which the testator declared: "All the property possessed by me is separate property and not community property." Two codicils were attached to this will. "Codicil No. 1" bears no date. "Codicil No. 2" is dated "San Francisco, November ——, 1912." In codicil No. 1 Crowley directed: "In case of my death prior to the death of my said wife all moneys, stocks, bonds or other securities now in our possession to be drawn by me or her shall be turned over to my executors and trustees as the same constitute a part of my estate." In codicil No. 2 he makes no reference to the character of his property, and there was no evidence tending to show when codicil No. 1 was executed. Codicil No. 2 was made shortly before the last will of Crowley, which was offered in evidence and is dated December 3, 1912, and revoked all prior wills. In this will he made a declaration similar to that found in the will of 1909; also, "that all moneys, bank accounts, stocks, bonds and other securities now in the joint name or joint custody of myself and wife, constitute a part of my said separate estate and are to be administered upon by my said executor pursuant to the terms of this will." In his last will he devised the residence property to his wife and one-half of all other property for her life. These wills were admitted subject to a motion to strike out, subsequently made and granted, on the ground that they were incompetent, irrelevant, and immaterial, and on the further ground that the instruments were self-serving declarations, and hearsay, and not binding in any way upon this plaintiff, and are not competent to change the contract.

Mrs. Crowley testified that she never knew that her husband had made a will until after his death, and was never consulted as to any provisions in any will, and had no knowledge that he had made a will until after he died.

Appellant, in support of its contention that the ruling was error, cites the following California cases: *Ruiz* v. *Dow,* 113

Cal. 490, 497, [45 Pac. 867]; *Sprague* v. *Walton*, 145 Cal. 228, [78 Pac. 645]; *Kyle* v. *Craig*, 125 Cal. 107, [57 Pac. 791]; *Estate of Hall*, 154 Cal. 527, [98 Pac. 269]; *Fanning* v. *Green*, 156 Cal. 279, [104 Pac. 308]; *Fulkerson* v. *Stiles*, 156 Cal. 703, [26 L. R. A. (N. S.) 181, 105 Pac. 966]; *Cooney* v. *Glynn*, 157 Cal. 583, 588, [108 Pac. 506]; *Runo* v. *Williams*, 162 Cal. 444, 451, [122 Pac. 1082]; *Williams* v. *Kidd*, 170 Cal. 631, [151 Pac. 1]; *Bertelsen* v. *Bertelsen*, 7 Cal. App. 258, 261, [94 Pac. 80].

In *Ruiz* v. *Dow* the declarations were against interest and not in disparagement of title. So also in *Sprague* v. *Walton*. In the *Estate of Hall* the declarations were made at the time the husband executed the deed to his wife, and showed an intention to retain absolute ownership during his lifetime, and have title pass only upon his death. The rule of *res gestae* applied. *Fanning* v. *Green* was not a case involving declarations, but concerned the admissibility of testimony of the grantor as to his intention in making the deed. The court held that a witness may be examined as to the intent with which he did a certain act where that intent is a material thing in the action. In *Fulkerson* v. *Stiles* the question was the same. So also in *Runo* v. *Williams*. In *Cooney* v. *Glynn* the evidence showed that the will which was held admissible was intimately connected with the deed made two or three days later. The court said: "Under the circumstances appearing here, the fact of the execution of the will by Mr. Gallagher, the devise of this property to Mrs. Cooney, its subsequent destruction at the instance of the defendant and the execution of the deed in lieu thereof in trust for Mrs. Cooney, would be material and competent evidence to establish the constructive trust alleged. The evidence should have been admitted."

*Williams* v. *Kidd* is particularly relied upon by appellant. The vital question in that case was: Did the grantor of the land, when he placed a deed in the hands of a third party to be delivered at the death of the grantor, intend that the title to the property should pass presently to the grantee? The court held that "the solution of this case is grounded entirely on the intention of the grantor and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question"; that "acts and dec-

larations of a grantor made after he has parted with the title
to the property and in disparagement of it are inadmissible
when made in the absence of the grantee, but where the very
question at issue is as to whether the grantor had ever parted
with title, the conduct and declarations of the grantor subse-
quently to the making of the deed are admissible as bearing
upon the issue as to whether there had been a delivery of
the deed.'' (Syllabus.) The facts in that case were such
as probably never before occurred, and will never again occur,
and are not to be overlooked as a controlling factor in apply-
ing the rules there laid down. We cannot for a moment
believe that the court intended to sweep aside all established
rules upon the question of the admissibility of declarations
by a grantor made subsequently to the grant. Indeed, the
court distinctly states that declarations made after he has
parted with his title, and in the absence of the grantee, are
inadmissible. In the *Williams* v. *Kidd* case the very question
at issue was as to whether the grantor had parted with title or
had in fact delivered the deed. The facts and circumstances
attending the transaction were very fully brought out in the
opinion and are too numerous to be here repeated. Briefly,
the grantor was a large owner of real property; he conceived
the plan of disposing of it to take effect at his death and
called in his clerk, Kidd, who was a notary, to help him work
out his plan. Kidd got together what data he could but in-
formed Williams that he thought he was hardly capable to
do the work. It involved the necessity of making thirty or
forty different deeds. The work was, however, commenced,
and four deeds were made out and signed by Williams—one
to his niece, Laura Miller (the deed to a certain warehouse
property), and three others to members of his family. The
deed involved was signed and acknowledged by Williams, who
handed it to Kidd ''with instructions to the latter to keep the
same and to give it to Laura Miller, the grantee named therein,
after he (Williams) was dead''; Kidd took the deed and kept
it in the safe where the papers of Williams were kept until
the death of Williams, eight years later, when he delivered
it to the grantee, who had meanwhile become his wife; noth-
ing further was done toward carrying out Williams' plan;
the other three deeds were not delivered, and were not after-
ward seen; the original plan seems to have been abandoned;
Williams continued to control and manage all of his property

as before, to the day of his death, and the plan he had conceived was never again mentioned; he did not recall the deed placed in Kidd's hands and never referred to it afterward; he spent several thousand dollars improving the property embraced in the Laura Miller deed; at one time, in Kidd's presence, an offer was made by a buyer to purchase this property from Williams, who claimed to own it, but he declined to consider a sale unless it included the hotel property; Kidd, at that time, and at no time, reminded Williams that he had conveyed this warehouse property to Miss Miller. The foregoing are some of the many acts and circumstances which the court held to be admissible as tending to throw light on the vital question whether there had been a delivery of the deed with the intention of presently passing title. One must read the very able and exhaustive opinion in the case fully to appreciate the rulings which the court felt constrained to make. We fail, however, to discover that the case is in any fair sense controlling here.

It seems to us that the parties interested in the fund now involved, dealt with it under an agreement so clear and unmistakable in its meaning and intent as to leave no room for doubt concerning their object originally in opening the account, and in their treatment of it from January 5, 1909, when it was opened, until January 17, 1913, when the last entry in the pass-book appears, four days before Mr. Crowley's death. He and his wife had been depositing and drawing out money from this account, amounting to many thousands of dollars, under an agreement declaring all moneys deposited to be "the joint property with right of survivorship of the undersigned, and payable to us or either of us, or to the survivor of us," and further declaring that "this right was without reference to the original ownership of such moneys; the act of so depositing said moneys, being absolute termination of any original ownership thereof." Under such circumstances, upon what principle can we say that a declaration of the husband in his will, made without her knowledge or consent, that all his property is separate property is admissible in disparagement of the interest of his surviving wife? To do so would be to hold that declarations purely self-serving, and in direct contradiction to the terms of the written instrument of the two spouses, are admissible. Here was a transaction commenced under a written declaration of the parties thereto whereby

the defendant became the trustee as custodian of the fund deposited with it. This trust relation existed and was recognized and acted upon by Mr. Crowley and his wife to the day of his death, and the fund then remaining in the hands of defendant by virtue of the executed agreement, as we think, became the property of the plaintiff by right of survivorship.

The declarations made in the will of Timothy Crowley were inadmissible as evidence of an intention other than that expressed in this executed agreement. (*Rowe* v. *Hibernia Savings & Loan Society,* 134 Cal. 406, [66 Pac. 569] ; *Eaton* v. *Locey,* 22 Cal. App. 769, [136 Pac. 534] ; *Batcheller* v. *Whittier,* 12 Cal. App. 262, [107 Pac. 141] ; *Rulofson* v. *Billings,* 140 Cal. 452, [74 Pac. 35].) It is true that the first will was made two or three months after the first deposit was made, but its provisions were unknown to plaintiff and, so far as appears, to their trustee. The testator continued, as did plaintiff, to recognize the account with the bank as controlled by their written agreement by an unbroken series of acts inconsistent with the declarations in the will, and it was not until he made the will on December 3, 1912, a little over a month before his death, that he made any declarations as to moneys in bank, in the joint name of himself and wife, being a part of his separate estate. Codicil No. 1 to the first will bore no date, and we must presume that it was executed after the will was made, but, so far as we know, it may have been made long after, and it is fair to presume that it was made while both he and his wife were treating the account as described in their written agreement.

It was held, in *Rulofson* v. *Billings,* 140 Cal. 452, [74 Pac. 35], that self-serving declarations by a decedent, made outside of the presence of the person affected thereby, are inadmissible. Speaking of the rule of *res gestae,* it was held that self-serving declarations, made long subsequent to the contract sought to be enforced, are not admissible as being part of the *res gestae.* "A declaration to be admissible as part of the *res gestae,* must be an incident, or the natural and spontaneous outgrowth of the main occurrence in question, and must exclude the notion of deliberation, or calculation, or design to make evidence for future purposes." (Syllabus.)

Appellant claims that the deposit account "did not divest Crowley of his ownership of the funds, or make Katherine Crowley a joint tenant as to such funds." In support of his

claim appellant cites *Denigan* v. *Hibernia Savings & Loan Society,* 127 Cal. 137, [59 Pac. 389]. In that case the deposit was made by Ellen Denigan of funds concededly her separate property. She received a pass-book "entitled No. 133269, Frank Denigan or Ellen Denigan in account with the Hibernia Savings & Loan Society." Frank Denigan was the husband of Ellen. Later Ellen died, and Frank caused this deposit and its accumulations to be transferred to an account entitled "No. 212,145, Francis Denigan or James Denigan in account" with the Hibernia Bank. Still later Frank died, and the question arose whether Frank had acquired a right to this fund superior to that of the personal representatives of Ellen. The court said: "As it was conceded at the trial that at the time the money was deposited by Ellen it was her separate property, it was incumbent upon anyone setting up a claim thereto against her personal representatives to show that he had in some way acquired her title. There is nothing in the record herein showing any declarations or conversations respecting the purpose of making the deposit in the form in which it was made, or the circumstances under which the deposit was made," except the form of the pass-book. . . . "It is not shown that the husband had any possession of the bankbook until after the death of his wife. . . . The form in which the deposit was made is entirely consistent with a desire on the part of the wife to give her husband authority to withdraw money from the bank from time to time as he might need it and it should not be held that she intended to part with her title thereto by reason of an ambiguous phrase, which is quite consistent with a contrary purpose." It was held that the administrator of Ellen's estate was entitled to judgment. A glance at the facts in that case, and the case here, shows that they are essentially unlike. In the case here the purpose of the deposit was expressly stated, and the character of the funds deposited, whether separate or community property, was expressly disposed of, and both parties to the deposit had possession of the pass-books, and both drew out money under their declared purpose in making the deposit, and both expressly stated what should become of the fund in case of the death of either.

We have been cited to no case and have been cited to no principle which convinces us that the learned trial court was in error in its conclusions of law or in its judgment.

We infer from the provisions of the last will of Crowley that he died possessed of much property aside from the balance left in this deposit account. With that property we are not concerned, but as to the deposit balance we think there can be no doubt of plaintiff's right to it.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.