[L. A. No. 1899.   Department One.—June 19, 1907.]

MONTE INGALL HUYCK et al., Appellants, v. EVA J.
RENNIE, as Executrix, etc., of Andrew L. Huyck, De-
ceased, et al., Respondents.

WILL—EVIDENCE — MENTAL CONDITION OF TESTATOR — INTIMATE AC-
QUAINTANCE—DISCRETION OF TRIAL JUDGE.—The trial judge must
determine in the first instance whether or not a proposed witness
as to the mental condition of a testator is or is not an "intimate
acquaintance" within the meaning of subdivision 10 of section 1870
of the Code of Civil Procedure, allowing such persons to testify as
to their opinion on that subject, and his determination will not be
disturbed on appeal, unless a clear abuse of discretion appears.

ID.—SLIGHT OPPORTUNITY FOR OBSERVATION.—It is not an abuse of dis-
cretion for the trial court to refuse to accept as an "intimate
acquaintance" of a testator whose mental capacity is in question,
a witness who had only observed him on three occasions while
giving him massage treatment.

ID.—OPINION AS TO MENTAL CONDITION—LIMITATION AS TO TIME.—The
opinion of an "intimate acquaintance" as to the mental condition
of a testator whose will is being questioned on the ground of his
insanity must be based on the observation of the witness, and should
be limited to some period of time at which the witness has come
in contact with him. Such a witness cannot give his opinion as
to the testator's mental capacity at the date of the execution of the
will, if he had not seen him for several months prior thereto.

ID.—TIME TO WHICH OPINION RELATES.—While evidence as to the mental
condition of the testator at times more or less remote from the date
of the execution of the will is admissible, the trial court may proper-
ly require the party offering such evidence to specify the time to which
it relates in order that its weight may be intelligently estimated.
And where a witness has testified to an acquaintance with the
testator for fifteen years, it is not error to refuse to permit the
witness to express an opinion as to his mental condition which is
not directed to any specific period. Nor is it error to refuse to
permit a witness to testify as to whether the testator, prior to the
date of the will, was able to attend to his business transactions, or to
find his way on the public streets.

ID.—CONTEST OF WILL—EVIDENCE—HEARSAY.—On the trial of a contest
of a will, where a witness for the contestants had testified that the
testator, a man of advanced years, had told her that he was going
to marry her niece, a girl of seventeen, it is proper to sustain an
objection to the question, "Do you know whether any one conversed
with him or endeavored to dissuade him from the belief that a
marriage would take place between himself and your niece?" Such
question called for hearsay and was incompetent.

ID.—KNOWLEDGE OR BELIEF OF TESTATOR.—On such a trial, a witness cannot testify as to the knowledge or belief of another; and while a delusion of the testator regarding a marriage might have been material, the materiality of the fact does not permit a party to establish it by incompetent testimony.

ID.—INSTRUCTIONS TO DRAFTSMAN OF WILL.—Where the attorney who drew the will in question was examined as a witness for the contestants regarding the directions and instructions given by the testator for the drawing of the will, it was proper on cross-examination to inquire fully into all that was said by the testator to the witness regarding his testamentary wishes. If the witness, in answer to a proper question designed to elicit such testimony, gives further improper testimony, the contestants' remedy was to move to strike out so much of the answer as was objectionable.

ID.—LEASE EXECUTED BY TESTATOR.—A lease executed by the testator was material and competent as tending in some degree to show the business capacity of the testator; and upon its being properly identified, and its due execution shown by the notarial certificate of acknowledgment attached, was admissible in evidence.

ID.—EXPERT AND OPINION EVIDENCE—IMMATERIAL ERROR.—Where a witness for the proponents had testified fully concerning the ability of the testator to conduct his business affairs, and had given the details of a certain transaction between them, it was error to permit the witness to answer a further question as to whether in his opinion the testator in such transaction "had received as much as was coming to him." The subject of the inquiry was not one calling for expert or opinion evidence, and an objection to the question on the ground of incompetency, and calling for a conclusion of the witness, should have been sustained. In view, however, of the other testimony of the witness as to the ability of the testator to manage his own affairs, the error in allowing the question was harmless.

ID.—INSTRUCTIONS—CONSTITUTIONAL LAW—DISCREDITING TESTIMONY OF PARTICULAR WITNESS.—Under the provisions of the constitution prohibiting judges from charging juries as to the facts, a requested instruction in a contest of a will on the ground of the testator's insanity, is properly refused if it was calculated to discredit the testimony of the subscribing witnesses, in comparison with the testimony of other witnesses.

APPEAL from an order of the Superior Court of Santa Barbara County refusing a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

G. W. Meals, and W. H. Johnson, for Appellants.

Sheridan & Fox, and Richards & Carrier, for Respondents.

SLOSS, J.—Andrew L. Huyck died on October 18, 1901, leaving an alleged will, which was, on the fourth day of December, 1901, admitted to probate by the superior court of Santa Barbara County. Some of the decedent's heirs at law commenced this proceeding to revoke the probate, on the grounds of insanity and undue influence. Issue having been joined, the case went to trial before a jury. At the trial the contestants abandoned their claim of undue influence, and the verdict of the jury was in favor of proponents on the other issue. A motion for new trial was made and denied, and contestants appeal from the order denying their motion. There is no contention that the evidence was not sufficient to justify the jury in their finding that the decedent, at the time of the execution of his will, was of sound and disposing mind. It is urged that the court erred in certain rulings made during the trial, and the points so made will, so far as their importance seems to require, be considered.

1. Several witnesses called by contestants were not permitted to state their opinions as to the mental sanity of the decedent. Under our code such opinions may be given by "intimate acquaintances" of the person whose mental condition is in question. (Code Civ. Proc., sec. 1870, subd. 10.) In the cases of two of the witnesses, Lenz and Boyer, the proponents objected that the required intimacy had not been shown, and the objection was sustained. The trial judge must determine in the first instance whether or not a proposed witness as to sanity is or is not an "intimate acquaintance" within the meaning of the code provision. His determination of this question will not be disturbed on appeal, unless a clear abuse of discretion appears. "And so it has been held, and wisely, that the trial judge is to be accorded wide discretion and latitude in this respect; and his ruling will not be disturbed except where the evidence is so lacking as to leave no room for question that the discretion has been improperly exercised." (*People* v. *McCarthy,* 115 Cal. 255, [46 Pac. 1073]; *People* v. *Hill,* 116 Cal. 562, [48 Pac. 711]; *People* v. *Manoogian,* 141 Cal. 592, [75 Pac. 177]; *People* v. *Suesser,* 142 Cal. 354, [75 Pac. 1093].) The testimony of witness Lenz may well have been viewed as showing that his acquaintance with decedent was of a merely casual character. Boyer had given massage treatment to the decedent on three occa-

sions, which afforded the extent of his opportunities for observation. There was no abuse of discretion in excluding the opinions of these witnesses.

The witness De Rome qualified as an intimate acquaintance. It did not appear, however, that he had seen the decedent within several months of the fifteenth day of May, 1900, the date of the execution of the will. He was asked whether he had an opinion as to "whether or not Mr. Huyck, about the 15th day of May, 1900, was possessed of a sound and disposing mind and memory." The question was objected to on the ground, among others, that "the evidence does not establish that Mr. De Rome saw Mr. Huyck on the 15th day of May, 1900." The court sustained the objection, saying that "the law only contemplates that a witness of that character shall testify to the mental capacity of the person at the time he has an opportunity to observe." We think the ruling, and the remarks made in support of it, entirely sound. The "intimate acquaintance" is allowed to give his opinion merely because he has had exceptional opportunities for observing the mental condition of the person in question, and the result of his observation cannot be given adequate expression except in the form of an opinion. But such opinion must be based on the witness's observation, and should be limited to some period of time at which the witness has come in contact with the person whose mental condition is the subject of inquiry. What has just been said applies as well to the point made regarding the testimony of the witness Cook.

Mrs. Calvert testified that she had known the decedent for fifteen years. She was asked to give her opinion as to whether he was of sound and disposing mind and memory. The question was not directed to any specific period, and by its terms had reference to the entire fifteen years of the witness's acquaintance with decedent. The court sustained an objection to the question on the ground of indefiniteness as to time. The ruling was manifestly correct. While evidence as to the mental condition of a testator at times more or less remote from the date of the execution of the will is admissible, the court may properly require the party offering such evidence to specify the time to which it relates, in order that its weight may be intelligently estimated. For the same reason, it was not error to sustain objection to the questions put to the witness Cook,

in which he was asked whether, "prior to May 15, 1900," Huyck was able to attend to his business transactions, or to find his way on the public streets. In each of these instances the objection was made and sustained on the specific ground of indefiniteness as to time. This objection could easily have been obviated by the putting of another question, and appellants should have adopted this method of eliciting the desired testimony.

2. Mrs. Calvert testified that the decedent, Huyck, a man of advanced years, had told her that he was going to marry her niece, a girl of seventeen. She was then asked, "Do you know whether any one conversed with him or endeavored to dissuade him from the belief that a marriage would take place between himself and your niece?" Proponents' objection was properly sustained, as the question called for hearsay, and hence incompetent, testimony. The answer to a further question, "Did he or did he not continue in his belief?" was likewise properly excluded, as was the answer to a third question, "Do you know whether or not your niece had any intentions of marrying him?" A witness cannot testify as to the knowledge or belief of another. (*Sneed* v. *Marysville Gas and Electric Co.*, 149 Cal. 704, [87 Pac. 376].) Evidence of statements or actions by the testator indicating his belief would have been competent, but contestants did not frame their questions so as to call for such evidence. It is argued that the existence of a delusion regarding a marriage was material, but the materiality of a fact does not permit a party to establish it by incompetent testimony.

3. E. M. Sheridan, one of the attorneys for the proponents, had drawn the will. He was called by the contestants and examined at some length regarding the circumstances attending the preparation and execution of the instrument. During this examination he testified that he had drawn the will according to the testator's instructions, that he had read the will, when drawn, to the testator, that the testator had spoken to him on prior occasions regarding the will, and that, while the will was being prepared, he and the testator had discussed its various provisions, section by section. He was also examined as to other wills. On cross-examination he was asked the following questions:—

Q. "Now, you say you fix this date about the will as being subsequent to July 9th, 1898, on account of the making of certain deeds?"

A. "Yes, sir."

Q. "Did the making of those deeds, according to any statements to you, have any effect as to his desire in regard to the testamentary disposition of the rest of his property?"

The objection to the last question, on the ground that it was not cross-examination, was overruled. There was no error in this. The contestants having questioned the witness regarding the directions and instructions given by the decedent for the drawing of his will, it was proper cross-examination to go fully into all that was said by the testator to the witness regarding his testamentary wishes. The question called only for statements as to such wishes. If the answer went further than this the contestants' remedy was to move to strike out so much of the answer as was objectionable. This they did not do.

4. The witness Sheridan identified a certain lease as one that had been agreed upon between the decedent and others after negotiations conducted in the presence of the witness. To the offer in evidence of the lease the contestants objected on the ground that it was "incompetent, irrelevant and immaterial; the proper foundation for its introduction has not been laid." There was no merit in the objection and it was properly overruled. The lease was material as tending in some degree to show the business capacity of the testator; being an act of the testator himself, it was competent evidence, and the proper foundation had been laid by the testimony of the witness, coupled with the proof of due execution afforded by the notarial certificate of acknowledgment attached. (Code Civ. Proc., secs. 1948, 1951.)

A second lease was produced and the witness was asked whether he had prepared it. There was no error in overruling this objection to this question, which was merely preliminary and for the purpose of identification. Furthermore, the question was answered in the negative, and the lease referred to was offered and admitted in evidence without objection.

5. Jules Klein was called by the proponents. He testified fully concerning the ability of the decedent to conduct his business affairs. After giving the details of a certain trans-

action between Huyck and himself, he was asked whether in this transaction Huyck "received as much, in your estimation, as was coming to him, you having knowledge of all the facts at hand?" The objection to this as incompetent, and calling for a conclusion of the witness was good, and should have been sustained. The subject of the inquiry was not one calling for expert or opinion evidence. The witness should have been required to state the facts and circumstances of the transaction, and the jury could then have drawn their own inference as to whether or not Huyck had received an advantage. But the ruling worked no substantial injury. The witness testified without objection that in his opinion Huyck was a man who "could fully keep or control the interests of his property and subserve his own interests." He had also testified that in this particular transaction Huyck had looked sharply to his interests. The answer to the objectionable question added nothing to the force of what was already before the jury.

6. The court gave to the jury full and fair instructions on the law governing the issue to be determined. No exception was taken to any instruction given. After the cause had been submitted to the jury they were brought into court and had instructions and testimony read to them. At this point the contestants orally requested an instruction to the jury "that they are not bound in finding their verdict under the testimony of the witnesses to the will, or that if they are not satisfied; from their testimony as against the testimony of others, that they may exclude the testimony." The court properly refused to comply with this request. It is unnecessary to cite authorities to the point that, in this state, where, under the constitutional provision, judges are prohibited from charging juries as to the facts, it is improper for the court in its instructions to select the testimony of particular witnesses as entitled to special weight or consideration. Similarly, it is improper to indicate that less regard is to be paid to the testimony of one witness than to that of another. The requested instruction was calculated to discredit the subscribing witnesses. The weight to be given to the testimony of these, as of all other witnesses, was solely for the jury, and the court had so instructed, both on originally submitting the cause, and again in response to the request for the instruction in question.

There is no other point meriting attention. On a view of the entire record we perceive no error affecting the substantial rights of the appellants.

The order is affirmed.

Angellotti, J., and Shaw, J., concurred.