[Civ. No. 741. Second Appellate District.—December 21, 1909.]

# W. C. BATCHELLER, Appellant, v. HENRY F. WHITTIER, Respondent.

ATTORNEY AND CLIENT—ACTION FOR SERVICES—OFFER OF SPECIFIC OR CONTINGENT FEE UNACCEPTED—ASSENT TO ACTION AND BENEFITS.— In an action by an attorney to recover a contingent fee from his client for legal services in the conduct of a suit, where the court finds that neither the offer of a specific fee nor of a contingent fee was accepted by the client, although, in view of the long relation of attorney and client between them, the client should have made an election, yet, upon his failure to do so, the prosecution of the action with his knowledge, and his acceptance of the beneficial results thereof, was, under section 1589 of the Civil Code, "equivalent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

ID.—FAILURE OF MINDS TO MEET ON AGREED COMPENSATION—IMPLIED PROMISE FOR REASONABLE VALUE OF SERVICES.—Inasmuch as the client did not signify his election between paying a specific fee or a contingent fee, and as performance by plaintiff does not appear to have depended upon the client's promise to do either, there was no meeting of minds of the parties upon any agreed compensation; and in the absence of an agreement upon that subject, defendant must be deemed to have promised to pay the reasonable value of the services performed in his behalf and with his consent and knowledge.

ID.—INADMISSIBLE EVIDENCE OF CONTINGENT FEE—ENTRY IN BOOK—RULE AS TO ACCOUNT-BOOKS—SPECIAL CONTRACT NOT INVOLVED.— An entry in a book kept by the plaintiff made a long time after the proposed contingent fee, stating "Agreed fee to be one-half," is not admissible to prove a contingent fee. Conceding that account-books are admissible to prove an account sued upon, the rule extends only to such entries as are the proper subject of a book account; an entry which is a mere memorandum of a special contract has no proper place in an account-book.

ID.—DECLARATION OF ATTORNEY MADE TO MORTGAGEE OF CLIENT.—A self-serving declaration made by the attorney to a mortgagee from whom he was negotiating a loan for his client, made in the absence of his client, that he "had a half-interest in the property," was not admissible to prove the contingent fee.

ID.—DECLARATION NOT PART OF RES GESTAE.—A declaration which is no part of *res gestae* made in favor of the plaintiff relying upon it, and without the presence of the defendant, was clearly inadmissible.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

G. E. Delavan, Jr., and Thomas C. Ridgway, for Appellant.

Wm. Rhodes Hervey, and Frank G. Finlayson, for Respondent.

SHAW, J.—Action to recover compensation for services rendered by plaintiff as an attorney at law for defendant.

Plaintiff alleges that on April 25, 1902, he and defendant entered into a contract whereby, in consideration of plaintiff prosecuting a certain action for defendant against one Thomas Gormley, defendant would pay all the costs of such litigation and plaintiff and defendant would equally divide the proceeds of such action, if successful, and, if unsuccessful, plaintiff should make no charge for his professional services so rendered therein. That plaintiff brought the action and prosecuted the same to a successful termination, as a result of which defendant received valuable real estate and a sum of money. In his answer, defendant admits the employment of plaintiff as his attorney in said matter, and also admits the action was prosecuted to a successful termination with the alleged resultant benefits, but denies making the alleged agreement touching the compensation to be paid plaintiff for services rendered in said matter, but, on the contrary, alleges: "That it was agreed between plaintiff and defendant that plaintiff should receive the sum of $250 for his services in such litigation in the superior court of the county of Los Angeles, state of California"; and that no agreement was had as to compensation for services in case an appeal should be prosecuted to the higher court.

Upon the trial, the court, among other facts, found that plaintiff offered to render his services in the prosecution of the action for a fee of one-half of the proceeds thereof, if successful, and that he would make no charge if unsuccessful, "but said defendant did not accept said proposition of plaintiff." The court further found, "that it was not agreed

between plaintiff and defendant that the plaintiff should re-
ceive $250 for his services in such litigation in the superior
court of the county of Los Angeles, state of California''; that
at the date of the employment plaintiff was the adviser and
attorney at law of defendant, and that plaintiff fully per-
formed his services as an attorney at law on behalf of defend-
ant, and that the reasonable value of such services was and
is $2,500, for which sum judgment went for plaintiff, from
which, and an order denying his motion for a new trial, plain-
tiff appeals.

There is no question as to defendant employing plaintiff to
prosecute the suit. The sole controversy relates to the exist-
ence of the alleged agreement fixing the compensation to be
paid plaintiff for his services.

The chief contention upon which appellant urges a reversal
is that the finding to the effect that defendant did not accept
the offer found by the court to have been made by plaintiff,
is unsupported by the evidence. The alleged contract rests
in the parol testimony of plaintiff. It appears therefrom
that defendant on several occasions prior to instituting the
suit consulted him as to the former's legal rights and the pro-
priety of bringing an action to protect such rights before
there was any discussion of the question of plaintiff's charges
for services to be rendered; that in one of these conversations
(when they were talking about the suit) defendant asked
plaintiff, ''How much would it be worth to bring the suit?''
to which plaintiff replied that the services in the superior
court would be worth from $250 to $500. ''He [the defend-
ant] didn't say anything to that.'' ''And then,'' continues
plaintiff, ''the matter ran on, as I say, until this final conver-
sation,'' which occurred on April 25, 1902. On this occasion,
plaintiff testifies, defendant was uncertain what he would do,
and plaintiff urged him to proceed with the suit, and after
further discussion of the details, defendant said ''that he
didn't want to take the chances of having to pay out attor-
ney's fees and then losing the suit or losing the property.''
Thereupon, plaintiff said: ''Well, let's commence suit. If
you don't want to pay attorney's fees, I will tell you what I
will do. I will take it and put it through and you pay the
costs and I will do the work, and we will each take one-half
of what we get out of it, and if we don't win I won't charge

you anything for my services''; to which defendant replied,. ''Well, I will go you on that,'' and plaintiff said, ''Very well, I will get the papers ready just as quick as I can and start the suit.'' Contrary to this evidence, defendant testifies that he called upon plaintiff, who for ten or twelve years had acted as his attorney, told him that he desired to employ him in the matter and gave him the particulars of the case; that two or three days after this he asked the plaintiff what he was going. to charge him for his services in the matter, and plaintiff replied, $250; that no other conversation relating to plaintiff's compensation for his services in the matter was had between them, and no conversation ever occurred wherein plaintiff offered, as he testifies, to take charge of and prosecute the case to a termination for one-half of the proceeds that might result therefrom.

It thus appears the evidence of the parties was in sharp conflict upon the question of defendant giving expression to any verbal assent to the offer made by plaintiff. The denial that the conversation occurred at all, as testified to by defendant, is tantamount to a denial that he consented thereto, by saying, in reply to the offer made by plaintiff, ''I will go you on that.'' Appellant insists, however, that, conceding there were no words used by defendant communicating his acceptance of the offer, nevertheless, the making of the offer as found by the court imposed upon defendant the duty of rejecting it by expressing his dissent therefrom; otherwise, defendant must be deemed to have accepted, by reason of his permitting plaintiff to perform the services as a result of which the former was benefited. The testimony of defendant clearly tends to prove that there was on his part no express verbal acceptance of the proposal. The question then resolves itself into this: Did the making of the proposal as expressed in the language of plaintiff and performance of the services with defendant's knowledge, but in the absence of express words whereby defendant signified his assent thereto, constitute a promise on defendant's part to pay the sum specified in the offer? We say ''promise'' because the action is based upon a promise in consideration of which plaintiff performed the service.

The evidence of plaintiff clearly tends to show that at the time of instituting the action plaintiff had made two prop-

ositions: One for services to be rendered in the superior court for a compensation of $250 to $500, as to which plaintiff testifies defendant said nothing. Later, when plaintiff urged defendant to institute suit and the latter expressed himself as reluctant to pay attorney's fees, plaintiff made a proposal for a contingent fee, which is embraced in his statement of what he said to defendant, above quoted. To this proposal the court, in effect, finds that defendant "likewise said nothing." In view of the existing and long-continued relation between the parties of attorney and client, as found by the court, the fact that the plaintiff had offered to perform the services incidental to a trial in the superior court for a specified fee, the subsequent offer made upon the condition that "*if*" defendant did not "*want to pay attorney's fees*" plaintiff would prosecute the action to a final determination for a contingent fee, necessarily called for some verbal expression on the part of defendant in order to signify his choice of evils between paying attorney's fees and the acceptance of the offer predicated upon the conditional clause introduced by the word "if." Clearly, the offer was not absolute, but made dependent upon the condition as to whether or not defendant *wanted* "*to pay attorney's fees.*" The nature of the proposal and circumstances under which it was made were such as called for an election on the part of defendant, which election, if made, could only be communicated by some verbal expression as to his choice between the paying of attorney's fees and accepting plaintiff's offer. The effect of the court's finding that "defendant did not accept the offer" is that defendant made no reply thereto, but stood silent. Under the circumstances, the prosecution of the action with his knowledge and acceptance of the beneficial results thereof "was equivalent to a consent to all the obligations arising from it, so far as" were known or ought to be known by him. (Civ. Code, sec. 1589.) Inasmuch as he did not signify his election between paying attorney's fees and accepting plaintiff's offer, and as performance by plaintiff does not appear to have depended upon his promise to do either, it follows there was no meeting of the minds of the parties upon the subject of plaintiff's compensation. In the absence of an agreement upon the subject, defendant must be deemed to have promised to pay the reasonable value of the services performed in his behalf and

with his consent and knowledge.    This sum the judgment accords to plaintiff.

The court refused to receive in evidence an account-book offered by plaintiff which purported to contain items of personal account between plaintiff and defendant relative to the Gormley suit, and which contained an entry as follows: "Agreed fee to be one-half." This entry, according to plaintiff's testimony, was made a month, or perhaps three months, after the alleged transaction.    Conceding that an account-book is admissible in evidence to prove an account sued on, the rule extends to such entries only as are the proper subject of a book account.    (9 Ency. of Law, p. 930.)    The entry, "agreed fee to be one-half," is a mere memorandum of a special contract, and had no proper place in an account-book (2 Wigmore on Evidence, sec. 1541), and as to which the extent of its use in evidence is fixed by section 2047, Code of Civil Procedure.    (*Reid* v. *Reid,* 73 Cal. 209, [14 Pac. 781] ; *People* v. *Lanterman,* 9 Cal. App. 684, [100 Pac. 720].)

There was no error in the ruling thereon.

Defendant borrowed from one C. K. Book $5,250, for which he gave his note and a mortgage securing its payment upon the real estate involved in the Gormley suit.    Negotiations for this loan were conducted by plaintiff.    The court refused to permit Book to testify that during these negotiations, had long after the making of the alleged contract, plaintiff stated to him that he (plaintiff) had a half interest in the property. This ruling is assigned as error.·  The making of this statement was wholly disconnected with the transaction claiming to constitute the making of the contract.    Upon no theory could it be regarded as a part of the *res gestae*.    We are acquainted with no principle of law under which this self-serving declaration, made without the presence of defendant, could properly be admitted in evidence.    Authority to the contrary is found in *Hausman* v. *Hausling,* 78 Cal. 283, [20 Pac. 570] ; *Nicholson* v. *Tarpey,* 70 Cal. 608, [12 Pac. 778] ; *Shamp* v. *White,* 106 Cal. 220, [39 Pac. 537].

Judgment and order affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 20, 1910, and a petition to

have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1910.