[Civ. No. 3387. Third Appellate District.—December 13, 1927.]

FRANK A. LIBBY, Respondent, v. IDA BELLE KIPP, Appellant.

Page, Nolan, Rohe & Hurt for Appellant.

W. Joseph Ford and Robert A. Jarrott for Respondent.

PLUMMER, J.—As the assignee of Frank G. Tyrell, attorney at law, the plaintiff had judgment for the sum of $10,545.89 as attorney's fees and costs. From this judgment the defendant appeals.

The record in this case shows that for some years prior to the sixth day of March, 1923, the defendant, Ida Belle Kipp, had been the wife of Bernhardt A. Kipp. That on the sixth day of March, 1923, Bernhardt A. Kipp died at the city and county of Los Angeles, leaving him surviving, as his widow, the defendant in this action. The record further shows that Bernhardt A. Kipp and the defendant, Ida Belle Kipp, contracted the relationship of husband and wife at a time when Bernhardt A. Kipp was well advanced in life and had accumulated an estate valued somewhere in the neighborhood of $500,000. That just preceding the marriage of the defendant, Ida Belle Kipp, and Bernhardt A. Kipp a prenuptial agreement was entered into between said persons, by virtue of which the said Ida Belle Kipp relinquished all claim of whatsoever character against the estate or property of the said Bernhardt A. Kipp, including all right to dower and right to inherit, as surviving widow. This agreement was entered into in consideration of the said Ida Belle Kipp ·receiving from the estate of said deceased, upon his death, the sum of $25,000. This sum was to be in lieu of any property rights which she might have or otherwise be entitled to as his widow. A

will subsequently executed by the said Bernhardt A. Kipp provided for the payment to the defendant of an additional sum of $3,000 per year. During the time the defendant and the said Bernhardt A. Kipp were living together as husband and wife in the city of Los Angeles, the said Bernhardt A. Kipp had, in taking title to what is called the home place, occupied by said parties, procured the title in the name of himself and the said Ida Belle Kipp, as joint tenants, with the right of survivorship. In addition to this, the said Bernhardt A. Kipp had registered under the Torrens Act, as community property of himself and his wife, about $40,000 worth of property. So far as our attention has been called to anything in the record, Bernhardt A. Kipp died childless. On the seventeenth day of February, 1923, Bernhardt A. Kipp and his wife, Ida Belle Kipp, entered into an escrow agreement with William Bauermeister and his wife, whereby it was agreed that the said Bernhardt A. Kipp and his wife would transfer to the said William Bauermeister and his wife certain property situate on Elden Street, in the city of Los Angeles, estimated to be worth the sum of $22,000, and pay the additional sum of $53,000, in consideration of which the said Bauermeister and his wife agreed to transfer to the said Bernhardt A. Kipp and Ida Belle Kipp, as joint tenants, a certain apartment building in the city of Los Angeles known as the La Rae Apartments, to Bernhardt A. Kipp. The deeds as executed by the respective parties pertaining to the transfer of the properties just above mentioned, together with the escrow agreement, were deposited with the Westlake Branch of the Citizens' Trust & Savings Bank in the city of Los Angeles. The time limited in the escrow agreement for the completion of the transfer of said properties and the payment of the sum above mentioned was thirty days. Thus, over one-half of the time limited for the completion of the transfer of the properties above mentioned had expired. The building on Elden Street above referred to was a part of the separate property of Bernhardt A. Kipp, and the $53,000 additional to be paid by the Kipps to the Bauermeisters was to be paid out of the separate property of the said Bernhardt A. Kipp. In order to enable him to make the payment in the sum of $53,000 to carry out his contract with Bauermeister, the

said Bernhardt A. Kipp had directed his brother, Frank Kipp, who lived in Milwaukee, to collect the sum of $75,000, which was due the said Bernhardt A. Kipp from certain parties owing him that sum in the city of Milwaukee, and to deposit the same in a Milwaukee bank to the credit of the said Bernhardt A. Kipp. It appears, however, that the said Frank Kipp collected the money upon the mortgages, as requested, but deposited the money in a Milwaukee bank in his own name. After the death of the said Bernhardt A. Kipp on the sixth day of March, 1923, as aforesaid, his widow, the defendant herein, Ida Belle Kipp, consulted attorneys Ralph W. Pontius and Frank G. Tyrrell, having offices in the Washington Building in the city of Los Angeles, and retained said attorneys in the matter of looking after her property interests. The exact language of the conversation that took place between the defendant and the said attorneys relative to the retention of their services is not set forth, and there is a conflict in the testimony as to just what services the attorneys were to perform. However, the matter of securing title to the La Rae Apartments, the obtaining of an additional $53,000 from the estate of Bernhardt A. Kipp, deceased, the matter of perfecting her title to the homeplace and her interest in the community property appear to have been mentioned. The securing of the title to the apartments and the funds to carry out the escrow agreement and to keep the same alive until it could be completed was the principal subject of consideration. It also appears that the said Bernhardt A. Kipp, by his will, disposed of his property in trust, this trust to be administered principally in the city of Milwaukee, state of Wisconsin. The widow, the defendant, Ida Belle Kipp, was not named as one of the trustees in the will just referred to, nor was she named as an executrix of the estate. Shortly after the death of the said Bernhardt A. Kipp, Frank G. Tyrrell, acting as the attorney of Ida Belle Kipp, filed a petition for special letters of administration upon the estate of the said Bernhardt A. Kipp, deceased, upon the hearing of which petition such letters were granted to the defendant, Ida Belle Kipp, and immediately thereafter a draft was drawn for the sum of $75,000 upon the money collected by the said Frank A. Kipp, as directed by the said Bernhardt A. Kipp, and at that time

supposed to be deposited in bank in the city of Milwaukee, in the name of the said Bernhardt A. Kipp. There being no money in the name of Bernhardt A. Kipp in bank in the city of Milwaukee upon which the draft was drawn, by reason of the fact that the money had not been deposited by the said Frank A. Kipp, as directed, the draft was returned unpaid and no money was immediately available for the payment of the sum of $53,000 in order to carry out the terms of the agreement with the Bauermeisters. Thereafter, and before the prenuptial agreement had been examined by Mr. Tyrrell, an application was made to the court for a widow's allowance and an allowance of $1,500 per month ordered by the court. This order was subsequently vacated. The record shows considerable negotiation between Mr. Tyrrell, representing the defendant, and the attorney representing Mr. Bauermeister relative to keeping alive the escrow agreement, and that in order to secure an extension of time and to permit the same to run until the money could be obtained to comply with the agreement, a bonus of something over $3,000 was paid by the defendant to Mr. Bauermeister. That in carrying out the agreement with Bauermeister, and before the money was obtained from the estate, the defendant borrowed something like $16,000. That in obtaining the loan of said moneys, Mr. Tyrrel rendered some assistance and did secure an advance payment of some $5,000 on the loan. It further appears that when Frank A. Kipp came to Los Angeles he was somewhat put out by reason of the action taken by Ida Belle Kipp, and through his attorneys sued out an injunction against Ida Belle Kipp to prevent her from collecting or disposing of any of the moneys of the estate of Bernhardt A. Kipp, deceased, and also proceedings were taken to obtain an inspection of the escrow agreement and the papers pertaining thereto placed in the hands of the bank hereinbefore named. It also appears that during the course of the administration of the estate, Mr. Tyrrell, acting in behalf of the defendant, filed a petition in behalf of Mr. Bauermeister under the provisions of section 1597 of the Code of Civil Procedure, asking for specific performance of the escrow agreement on the part of the trustees of the estate of Bernhardt A. Kipp, deceased, and also a like petition in behalf of the

defendant, Ida Belle Kipp. In due course of time these petitions came on for hearing, and at the hearing, at least formal opposition was made by the trustees of the estate of Bernhardt A. Kipp, deceased. The hearing occupied, as stated by appellant, about one hour and a half. So far as the transcript shows, it would appear that the testimony taken upon this hearing related principally to identifying the signatures of the parties to the respective instruments, and the terms of the escrow agreement and the amount of money to be paid by Bernhardt A. Kipp, deceased, to Mr. Bauermeister in order to comply with the terms and provisions of the escrow agreement. At the conclusion of the hearing the court made an order directing the trustees of the estate to pay over the sum of $53,380, in pursuance of which the record shows that the trustees of the estate of Bernhardt A. Kipp thereafter did turn over to the escrow-holder said sum of money, this being paid on or about the tenth day of October, 1923. It may be here stated that the trustees of the estate of Bernhardt A. Kipp, deceased, after making of the two orders above mentioned, took an appeal to the supreme court from these orders, which appeals were dismissed prior to the tenth day of October, 1923. At the time the orders were made and subsequently thereto, it appears, at least from the statements of the attorneys representing the trustees, that all that was desired was that the trustees of the estate of said deceased would be protected from liability on account of such payment, and that the orders of the court should be so made as to afford protection to the trustees. Upon the settlement of the account of the defendant as special administrator, attorney's fees were allowed in the sum of $500, and the same were paid, and are not taken into consideration in this action. Proceedings were also taken by Mr. Tyrrell in behalf of the defendant, under the provisions of section 1723 of the Code of Civil Procedure, in order to obtain a decree adjudging termination of the estate and interest of the said Bernhardt A. Kipp in and to the home-place heretofore referred to which was held by the said Bernhardt A. Kipp and Ida Belle Kipp as joint tenants with the right of survivorship. Some other proceedings were taken upon a citation directed to the trustees, to show cause why they should not be removed from their trustee-

ship. This proceeding, however, was dismissed. After these proceedings had been taken and had, it appears from the transcript that the defendant, Ida Belle Kipp, wrote to her attorneys, Pontius and Tyrrell, notifying them that she no longer desired their services. However, no substitution of attorneys was ever made. Mr. Tyrrell, who was the attorney of record in all these proceedings, then made out his bill for services rendered in behalf of the defendant in matters pertaining to the properties which we have mentioned in the sum of $11,000, giving credit to the defendant for the sum of $500, paid as aforesaid, leaving due as attorney's fees the sum of $10,500, and also the further sum of $45.89 paid out as costs advanced in the course of the proceedings referred to. Payment being declined by the defendant, assignment of the account was made to the plaintiff herein, and this action begun for the collection of the same.

It is contended upon this appeal that the allowance of fees in the sum named by the trial court is exorbitant and is so grossly excessive that this court should interfere and either reverse the judgment or modify the same. It is perhaps difficult to conceive of any record that could be presented to the appellate court which would give less light upon the subject to be determined than a transcript relating to the fees or compensation that should be awarded for professional services, for the simple reason that only a few pages of testimony or a few simple statements contained in the record may be necessary to state the proceedings taken and had so far as the court records are concerned, whereas the time required to ascertain and determine the proceedings that should be taken or the skill required to determine the proper proceedings to be taken are the real elements which enter into the value of the services for which compensation is properly awarded, cannot be placed upon, and never do appear on a typewritten or printed page. ■ It is for this reason that the matter of awarding compensation for professional services, when that service is rendered by an attorney, is left, to so great a degree, in the judicial discretion of the trial court, so much so that unless the sum allowed is plainly and palpably exorbitant and such as shocks the conscience of an appellate court, the determination of the trial court will not be

disturbed. It is not sufficient that the transcript, as read by an appellate court, discloses a case from which, if the court of appeal were to decide the matter in the first instance, it would only allow compensation in a materially reduced sum. There is nothing in the record that shows any prejudice or bias on the part of the trial court, or that the trial court did not conscientiously endeavor to ascertain the compensation that should be justly awarded for the services rendered by the attorneys involved in this action for the defendant Ida Belle Kipp.

While the testimony does not show, as we have stated, that the defendant Ida Belle Kipp gave any specific directions to Mr. Tyrrell or to Mr. Pontius, to examine into either the prenuptial agreement or the will of the deceased, creating a trust to be administered in the city of Milwaukee it is nevertheless apparent that an attorney, in order to ascertain just what rights the widow had in the matter, and how to proceed in relation to securing compliance with the escrow agreement which we have herein referred to, and to have the title of the La Rae Apartments vested in the widow, would necessarily desire to acquaint himself fully with every instrument affecting the estate of the deceased in order that he might be in a position to take advantage of any defect therein, to the intent that parties representing opposing interests might be induced to accede to a fair, advantageous, and perhaps a liberal settlement of property upon the widow, in order to avoid a contest such as might be instituted to set aside the prenuptial agreement, especially in view of the fact that it provided for a payment of $25,000 out of the estate of the deceased after his death, and was not an advance payment of any sum, at a time when neither the deceased nor his estate was under any obligations to the defendant. On the face of it, it would appear that the widow had in consideration of the sum of $25,000, to be paid out of the estate of Bernhardt A. Kipp, after his death, relinquished all claim to the decedent's estate valued, as shown by the record, at the sum of about one-half million dollars. We may here state the record does disclose that Mr. Pontius drew the will creating the trust for Bernhardt A. Kipp, but the record does not show that either Mr. Pontius or Mr. Tyrrell knew anything about the prenuptial agreement entered into be-

tween the deceased and the defendant, Ida Belle Kipp, who, after the death of Bernhardt A. Kipp, became their client. And if the prenuptial agreement contained terms and provisions which were subject to doubt, and in the light of which the will executed by the deceased might be open to litigation, it was the duty of Mr. Tyrrell or Mr. Pontius to investigate the subject thoroughly, even though the widow did not desire to contest either the prenuptial agreement or the will creating the trust. It, of course, required no great consideration to determine that Mr. Bauermeister had a right to petition, under section 1597 of the Code of Civil Procedure, for an order directing the trustees of the estate of Bernhardt A. Kipp, deceased, to comply with the escrow agreement and pay over to him or to the persons to whom the sum of money was directed to be paid for his benefit by the said Bernhardt A. Kipp to complete the portion of the agreement that was to be carried into execution by said deceased, but there was a serious question as to where the title would be vested to the La Rae Apartments when the deed placed in escrow by Mr. Bauermeister and his wife, purporting to convey the La Rae Apartments to Bernhardt A. Kipp and the defendant, Ida Belle Kipp, as joint tenants, with the right of survivorship, should be delivered. Would that title be vested absolutely in the defendant, or would she take that title, as a tenant, of an undivided one-half interest therein and as holding an undivided one-half interest therein as trustee for those entitled to take under the will of the deceased? The general rule in relation to escrows is that a deed does not transfer title, or that an instrument does not take effect until the contingency has occurred which entitles the grantee to a delivery of the instrument. This rule is obviated to some extent by the fiction of law whereby a subsequent delivery is held to relate back. The rule also is that where a valid escrow agreement has been entered into, the death of one of the parties does not invalidate the agreement and the other party has a right to insist upon its performance. As the matter is not before us, we express no opinion as to the title that would or could have come to the defendant in this case by the payment of $53,380 to Mr. Bauermeister by the trustees of the estate of Bernhardt A. Kipp, deceased, if the question of the title that would have been required

under the deed delivered after the death of Bernhardt A. Kipp which purported to convey to him and to the defendant, Ida Belle Kipp, a joint estate with the right of survivorship, had been contested. It is sufficient to say that the circumstances which we have detailed required careful, as well as skillful, consideration, procedure, and management in order that the title to the property valued at $75,000 should be vested in the defendant. The circumstances upon their face show that the results attained actually removed from the separate property of the estate of the deceased and vested in the defendant property of the value above stated. While the record does not show many appearances in court, and it is not indicated that the time consumed in hearing any of the motions or proceedings presented to, or taken and had in the courts, occupied any considerable period or even amounted to more than formal hearings, such as the necessary identification of signatures and an exhibit of the various instruments relating to the property involved, there is, however, testimony to the effect that a considerable portion of counsel's time was devoted to the consideration of the rights of the defendant in and to the property mentioned, almost daily for a number of months. The opinion of the trial court printed in the appendix to appellant's brief shows that the trial court was convinced that all the proceedings taken by counsel for the defendant were taken in good faith, and that, while anticipated contests did not materialize, or that not more than a formal contest was made to the proceedings instituted by counsel for the plaintiff to secure title to the property as herein indicated, the circumstances were such as justified counsel in thoroughly preparing for any contingency that might arise. The opinion further indicates that the court was impressed with the necessity of prompt action on the part of counsel for the defendant to prevent loss to her of property valued at the sum of $75,000. Whatever may have been the position taken by the trustees of the estate of Bernhardt A. Kipp, deceased, it is evident from the record that Bauermeister was in a position to dictate terms by reason of the time limit contained in the escrow agreement, and the record does show that Bauermeister made considerable difficulty and some effort to escape from the terms of said agreement, whether with

the intent of securing release therefrom by insisting upon the time limit contained therein, or simply for the purpose of obtaining additional money, is immaterial. That this situation had to be handled carefully is patent, and the services of counsel in relation thereto were matters properly to be taken into consideration by the trial court. The record shows that the additional time was secured to the defendant by the payment of some additional bonuses to Bauermeister. █ The transcript also sets forth the testimony of a number of expert witnesses, all of whom testified as to the value of the services, and placed a higher estimate thereon than was allowed by the trial court. This, however, is not the sole criterion by which to judge of the value of counsel's services. The opinions of experts are admissible, but after such testimony is admitted, the case goes back to the sound judgment of the trial court, and unless we ·can say that judgment and discretion have been abused and the amount of compensation awarded grossly excessive or exorbitant, we are not in a position to order a reversal or even a modification of the judgment. In the case at bar the amount allowed seems rather large, as we gather the extent of the services from the cold record. But for the reasons hereinbefore stated, we are not in the same position as the trial court in passing judgment, as the transcript is necessarily lacking in many of the elements which must be taken into consideration by the trial court. The mere fact that we may think the trial court erred somewhat in judgment and allowed more than this court would have allowed, presents no cause for reversal. An appeal in cases of this kind cannot be converted into a trial *de novo*. The law upon this subject is so fully set forth in the cases cited by the opinion of this court, written by Mr. Justice Hart, in the matter of the *Estate of Iser*, 52 Cal. App. 405 [198 Pac. 1014], that we only need to give the citation in support of what we have just said.

Being of the opinion that the amount of attorney's fees awarded in this case is not so grossly excessive as to justify interference on the part of an appellate court, the judgment of the trial court is hereby affirmed.

Finch, P. J., and Hart, J., concurred.