[Civ. No. 9382. First Appellate District, Division Two.—November 20, 1934.]

THEODORE M. STUART, Respondent, v. JOHN W. PRESTON et al., Appellants.

Hatch & Mahl, C. F. Rafferty and Fitzgerald, Abbott & Beardsley for Appellants.

Casper A. Ornbaun, Everett H. Roan and Livingston & Livingston, *Amici Curiae* on Behalf of Appellants.

John Francis Neylan, Grove J. Fink and Myron Harris for Respondent.

NOURSE, P. J.—Plaintiff sued on a common count for the reasonable value of legal services. The cause was tried before a jury and plaintiff had a verdict for $50,400. The defendants' motion for a new trial was denied and they present this appeal from the judgment under the alternative method.

The defendants were attorneys under a written contract for a group of land owners known as the Herminghaus heirs in litigation involving water rights in the San Joaquin Valley and terminating in the case of *Herminghaus* v. *Southern California Edison Co.*, 200 Cal. 81 [252 Pac. 607]. The defendants' contract was a contingent one dependent upon the value of the water rights involved, certain payments to be made in event of sales by the land owners based upon a percentage of the selling price. After the affirmance of the judgment negotiations were carried on by the defendants in behalf of the Herminghaus heirs for the sale of the water rights to the power company and at the same time other negotiations were conducted by the heirs independently for the same purpose. A dispute arose over the amount of defendants' fees for their services and they commenced an action against the heirs for recovery. The plaintiff herein, a practicing attorney in the city of Fresno, was employed by the defendants to prosecute that litigation. The cause was tried before a jury, but on the motion of the plaintiff the trial court directed a verdict in their favor for the sum of $259,960 plus interest and costs and on appeal that judgment was affirmed (*Preston* v. *Herminghaus*, 211 Cal. 1 [292 Pac. 953]). Thereafter the plaintiff delivered to the defendants a check for approximately $311,000 covering this judgment with costs and accrued interest less a loan of

$2,500 which the heirs made to one of these defendants. A dispute immediately arose between the defendants as to the division of this fee, the defendant Preston demanding one-half of the fee while the defendant Peck insisted that he was entitled to two-thirds and Preston to one-third. Incidental to this dispute the defendants were unable to agree on a reasonable compensation to be paid to the plaintiff for his services and this action followed. A protracted and acrimonious trial was held in which the attorneys and witnesses frequently strained the patience of the trial judge who conducted the trial with commendable dignity. In presenting their appeal the parties have not relaxed in their feelings toward each other and for this reason it has become most difficult to sift the statements of fact which are based upon the record from those which are the personal opinions of counsel. We will discuss the cause as simply a case in *assumpsit* without regard to the parties involved or the personalities injected into the briefs.

The first point raised by appellants is that their motion for a directed verdict should have been granted. The point is not tenable. The appellants concede that the evidence of an express contract is conflicting and that there was substantial evidence offered by respondent that no fee was fixed by the parties. The issue of an express contract was raised by appellants as a special defense to the action in *quantum meruit*. Since the evidence was in conflict the issue was properly left with the jury.

The appellants then argue that, under respondent's version of the conversation of September 12, 1928, the parties agreed that appellant Preston could fix the fee himself and that the respondent could not therefore maintain an action in *quantum meruit*. Here, too, there is a direct conflict in the evidence. The appellant Preston testified that no such agreement was made. The respondent testified that, at the time this conversation was had, the duties to be performed by him were very indefinite, that he refused to agree upon a specified fee, and that he told this appellant: " ' . . . when it is all over you and I will sit down and figure out a fair and reasonable fee for the work I have done'. He said 'That is satisfactory. I will pay you and I will pay you well,' is exactly the words he used, and to that I replied 'Well, in the first instance, you can fix the amount of my

fee yourself when we are through, because all I want is a fair and reasonable compensation for the services that I rendered, *and we will sit down and fix it when it is all over*,' and he said, 'That is fine, Ted.' And that ended the conversation in so far as the employment was concerned.''

For the purpose of showing the construction of the parties evidence was offered of a conversation held on September 27, 1928, wherein the parties discussed fixing the fee upon a contingent basis, and another on December 8, 1930, when respondent delivered to appellant Preston a check for $311,000 wherein they discussed the question of a reasonable fee on the basis of the entire absence of any express contract. The appellants argue that the evidence preponderates in their favor. ■ But we are limited by the unbroken rule of authorities holding that, when there is substantial evidence supporting respondent's theory the question is one for the jury. This state of the evidence is a complete answer to all that appellants say in support of their motion for a directed verdict. ■ It answers as well their contention now made that, because of the express contract, the respondent should not be permitted to recover on a *quantum meruit*. With their premises lost in the conflict of evidence rule there is left no basis for their conclusion. To this extent the case is controlled by *Batcheller* v. *Whittier*, 12 Cal. App. 262 [107 Pac. 141], and *Elconin* v. *Yalen*, 208 Cal. 546 [282 Pac. 791], holding that where there has been no meeting of the minds on the subject of compensation but merely a contract of employment the plaintiff may sue for the reasonable value of his services.

■ For their second point the appellants assign as error the refusal of the trial court to give a proffered instruction. The first part of the proposed instruction, relating to the issue of an express contract to pay a fixed fee, was fully covered by appellants' instruction numbered IV. The second part, relating to an agreement permitting appellant Preston to fix the fee and advising the jury that, if they found such an agreement, then plaintiff could recover but $2,500, was not supported by any evidence and would have been an incorrect statement of the law. The undisputed evidence of both parties was that no such agreement had been made and that appellants did not pretend to fix the fee in the sum of $2,500 or in any other amount. The last part

of the proposed instruction advising the jury that they could not consider the question of the reasonable value of respondent's services unless they found that no agreement was made between appellant Preston and respondent was fully covered by instruction number IV given at appellants' request in so far as it related to the question of an express contract. But, in so far as it related to an agreement giving the appellant the right to fix the compensation, it was an instruction on an issue not raised and not supported by any evidence.

The third point raised is that respondent's services were not reasonably worth the sum awarded. The appellants present this point under two heads—the sufficiency of the evidence to support the verdict, and the objections to the hypothetical question put to respondent's expert witnesses. As to the first question the evidence of the reasonableness of the fee takes a wide range. Five members of the bar called by the respondent gave values ranging from $46,000 to $62,500. Six members of the bar called by the appellants gave values ranging from $1500 to $3,500. We must assume that all these witnesses were reputable lawyers and that each testified honestly as to his opinion in the matter. We may assume also that the fee awarded is higher than we would have allowed if called upon to fix it in the first instance. But it should be borne in mind that this is not a case coming under section 4¾ of article VI of the Constitution and 956a of the Code of Civil Procedure where an appellate court may make findings of fact contrary to those made by the trial court. This is a case where a trial by jury was a matter of right. For this reason the question of the evidence is limited to the single inquiry whether there is substantial evidence supporting the verdict. That there is such evidence is conceded by appellants; their only argument on this branch of the case is that the appellate court should disbelieve respondent's witnesses and disregard all their testimony. That this is not the function of the appellate court after a trial by jury is settled beyond argument. In *Treadwell* v. *Nickel,* 194 Cal. 243, 251 [228 Pac. 25], the Supreme Court, in considering the identical subject, said: "The question as to the reasonable value of the services rendered by the plaintiff was submitted to a number of able

and competent attorneys, who testified in the case. Some of them advanced a lower figure than that claimed by him, but others fixed their value at amounts far in excess of that established by the verdict. Consequently the issue as to the value of the services may be considered as having been closed by the finding of the jury." To the same effect are *Libby* v. *Kipp*, 87 Cal. App. 538, 548 [262 Pac. 68]; *Grass* v. *Rindge Co.*, 84 Cal. App. 750, 766 [258 Pac. 673]; *Donovan* v. *Root*, 114 Cal. App. 114, 117 [299 Pac. 568].

The appellants argue that they have found an exception to this rule in the language appearing on page 544 of the Libby case that the judgment of the trial court is not controlling if "the sum allowed is plainly and palpably exorbitant and such as shocks the conscience of an appellate court . . . " The court had in mind that principle governing the appellate courts in the review of verdicts generally and which is best stated in *Davis* v. *Renton*, 113 Cal. App. 561, 563 [298 Pac. 834], as follows: "The remedy for safeguarding against the danger of excessive verdicts is committed necessarily to a great extent to the judge who presides at the trial, and the reviewing court may interfere only in cases where the excess appears as a matter of law, or where the recovery is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice or at first blush raise a presumption that it is the result of passion, prejudice or corruption rather than honest and sober judgment."

There is no showing here that this verdict was the result of passion or prejudice. It is supported by the sworn testimony of reputable members of the bar. To hold that it is excessive (or so grossly excessive as to shock our consciences) we would have to find that all these witnesses swore falsely and that the trial judge refused to perform his duty when he denied the motion for a new trial. Since the question is presented here merely on the theory that the judgment is excessive and that we should exercise our independent judgment as lawyers and fix a reasonable fee the obvious answer is that, under the authorities cited, that cannot be done.

■ The second phase of this question is presented on the theory that the evidence of the services performed by the respondent was insufficient to support several portions of the

hypothetical question propounded to respondent's witnesses. What counsel really mean is that there is a preponderance of evidence supporting their estimate of the value of these services. We will not extend the opinion by discussing these items severally. It is sufficient to say that in each instance substantial evidence was offered supporting each assumption found in the question and that respondent cannot be denied the right to assume a statement of facts which he claims the evidence justifies even though such facts are denied by his adversary. (*Treadwell* v. *Nickel*, 194 Cal. 243, 267 [228 Pac. 25].)

█ The fourth point raised by appellants involves the rulings on the cross-examination of Justice Preston concerning his practice of the law during his occupation of the office of a justice of the Supreme Court. To understand the questions raised it is necessary to state that the answer of the Herminghaus heirs to appellants' suit for attorney's fees raised the special defense that while the action concerning the water rights was pending Preston became a justice of the Supreme Court; that, as such, he was disqualified from practicing law, and had thereby breached his contract. The plaintiffs in that case countered this allegation with the assertion that, notwithstanding the occupation of the judicial office, the services had been rendered in accordance with the contract. The respondent in this case assigned this situation as adding to his embarrassment and worry in his capacity as attorney for the appellants in *Preston et al.* v. *Herminghaus*. The appellants countered with the assertion that such legal services as had been rendered after Justice Preston assumed his duties on the bench were within his rights as a justice of the Supreme Court because as such officer he was barred only from appearing in a court in this state. The whole issue was emphasized before the jury by the appellants in their effort to minimize the services rendered them by the respondent. For this purpose they insisted that they were in fact chief counsel in the litigation for attorney's fees and that respondent was merely an assistant brought in to lend local color to the trial in Fresno County. For the same purpose they took the position that a justice of the Supreme Court was not disqualified from practicing law so long as he did not appear in any of the courts of this state. The re-

spondent inquired as to their knowledge of the decision of our Supreme Court in *State Bar* v. *Superior Court*, 207 Cal. 323 [278 Pac. 432], where a contrary holding was made in relation to Judge Hardy of the superior court. The appellants also insisted that because they had a contract for legal services calling for a contingent fee they had a vested interest entitling them to proceed with the services notwithstanding the section of the Constitution prohibiting a justice from engaging in the practice of the law. The respondent attacked this position as legally and ethically unsound. Thus the examination of the witnesses resolved itself into a controversy over legal principles but the door for this cross-examination of the appellants and the subject-matter of the inquiry to which it extended was thrown wide open by them. Witnesses called by the respondent had testified that this circumstance was an item to which they gave consideration in estimating the value of respondent's services. The appellants countered with the assertion that it was an item of no consequence because Justice Preston was legally entitled to continue the practice under the circumstances. The cross-examination which is now criticised was directed to this testimony. Hence, when the appellants objected to the line of questioning on the single ground that the questions were immaterial, these objections were properly overruled. ▉ That they should now argue that the inquiry was designed to harass the appellants and to create prejudice in the minds of the jury is of no avail because no objections of that character were made which would have enabled the trial judge to rule and no assignments of error or misconduct were made. Furthermore, on the request of the appellants, the trial judge instructed the jury on this phase of the case to the effect that a justice of the Supreme Court was not prohibited from practicing law except in a California court and was not prohibited from looking out for his own interests under the contract here involved.

▉ In appellants' fifth point they claim error in the examination as to differences that arose between the two appellants after respondent's employment terminated. The respondent had testified that the appellants had quarreled in Fresno before and during the trial of *Preston* v. *Herminghaus*. The appellant Preston had denied that they had ever

quarreled at any time. This, of course, opened the cross-examination of that witness on the subject of quarrels irrespective of the time they occurred. The cross-examination of the appellant Peck on this subject was opened by his testimony on direct relating to a controversy which he had had with his co-defendant. The materiality of the examination is apparent. The respondent had tendered evidence showing that he had two warring clients and that he had to assume the responsibility of bringing them together for the trial. The appellants had insisted that they had personally conducted the litigation and that respondent was merely called in for local color. Under respondent's theory this had a direct bearing upon the question of the value of his services and he was entitled to prove that theory.

Finally, it is argued that the trial court erred in refusing to instruct the jury as to the correct answers to various legal questions involved in *Preston* v. *Herminghaus*. Generally the appellants contend that certain services rendered by the respondent in examining a witness, in amending the complaint, and in defending the interpretation of the contract before the trial court and on appeal were valueless because the Supreme Court on that appeal held that the respondent in each instance was right. Hence they say, in effect, if an attorney successfully prosecutes a cause through trial and is sustained on appeal it must be because the law was on his side and, therefore, the clients should not be required to pay much for his services. There is no authority for the proposition advanced by appellants and if the trial judge had given the instructions proposed by them he would have committed error in taking from the jury the determination of essential questions of fact. The value of respondent's services cannot be determined on the basis of the answers which the Supreme Court in a lengthy opinion gave to these legal questions. A reference to that opinion will disclose that the court deemed these particular questions of such importance as to merit special comment and approval. The value of respondent's services is more properly determined on the basis of the difficulties which these matters gave to the respondent at the time—difficulties which the appellants concede were *at the time* deemed serious by them and which they, as able and learned attorneys, approved at

the time with compliments to the respondent for the good judgment he then displayed.

The judgment is affirmed.

Sturtevant, J., and Dooling, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1934, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied.

The defendants asked the trial court to give four several instructions. It modified two and gave them as modified. The other two the trial court refused to give. On these rulings they predicate prejudicial error. They assert:

"The actual legal questions answered in the proposed instructions were as follows:

" (a) Did the complaint in *Preston* v. *Herminghaus*, state a cause of action before it was amended as a result of the respondent's suggestion?

" (b) What was the legal effect of the evidence given by the witness Brackenridge in response to a certain question; in other words, was the evidence in the Brackenridge deposition before this question was asked legally sufficient to support a verdict for the compensation claimed by the appellants?

" (c) Was there any material conflict in the evidence in the case of *Preston* v. *Herminghaus*, as the evidence was disclosed in the reporter's transcript which was in evidence in this case?

" (d) Was the written compensation contract involved in *Preston* v. *Herminghaus*, clear and unambiguous upon its face?" Each question was addressed to issues made by the evidence and not by the pleadings. ▉ As to the propriety of refusing to give any one of the requested instructions, the proper rule has been settled by a long list of decisions. "It is undoubtedly error for a court to single out certain issues, or isolated portions of the evidence, thereby intimating that special consideration should be given thereto." (24 Cal. Jur. 843; *Treadwell* v. *Nickel*, 194 Cal. 243, 262 [228 Pac. 25]; *Still* v. *San Francisco etc. Ry. Co.*, 154 Cal. 559, 572 [98 Pac. 672, 129 Am. St. Rep. 177, 20

L. R. A. (N. S.) 322]; *Estate of Martin,* 170 Cal. 657, 672 [151 Pac. 138]; *Boa* v. *San Francisco-Oakland T. Rys.,* 182 Cal. 93, 101 [187 Pac. 2]; *Estate of Clark,* 180 Cal. 395, 399 [181 Pac. 639]; *Huyck* v. *Rennie,* 151 Cal. 411, 417. [90 Pac. 929]; *Kauffman* v. *Maier,* 94 Cal. 269, 283 [29 Pac. 481, 18 L. R. A. 124]; *Sullivan* v. *People's Ice Corp.,* 92 Cal. App. 740, 745 [268 Pac. 934].) The same rule has been followed generally in the federal and state courts. (64 C. J. 686.) The record in the instant case shows no reason for departing from that rule. The deposition of the plaintiff was taken before the trial and on the trial he appeared as a witness in his own behalf and was examined and cross-examined. Each party called leading members of the bar and propounded to each witness its hypothetical question. Each of those witnesses was examined and cross-examined. No factor in the claim of the plaintiff was excluded when examining said witnesses. No error in ruling on evidence is claimed. If, as defendants now assert, certain services which the plaintiff claimed he rendered were of negligible importance and therefore of negligible value, the defendants had a full opportunity to develop the facts and obtain appropriate rulings on the law when such witnesses were under examination.

 The first question (a) is not a correct statement of the question that was before the court. The plaintiff did not contend that the complaint in *Preston* v. *Herminghaus* before the amendment did not state a cause of action. He claimed that the amendment was pertinent for the purpose of more specifically defining the subject-matter for which the plaintiff Preston was claiming relief. As to the effect of the amendment the record discloses that Judge Strother, who permitted the amendment, stated that it made no material change in the pleading. He was the one to decide the point and his opinion was presumptively correct.

 The next question (b) was not a question of law but was one of fact for the jury and was answered by the testimony contained in the transcript in *Preston* v. *Herminghaus* which was in evidence for the information of the jury. Moreover, the subject was fully covered by instruction number 12, which was given. The next question (c) was also a question of fact for the jury and not one of law.

It was answered by the evidence introduced to the effect that Judge Strother, in *Preston* v. *Herminghaus,* granted a motion for a directed verdict, which may legally be done only when there is no "material conflict" in the evidence, and his judgment was affirmed on appeal. As to the last question (d) it was also answered by the same ruling. For each of the foregoing reasons the trial court in the instant case committed no error in refusing to give any of the rejected instructions.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 17, 1935.

Preston, J., being disqualified, did not participate.